**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM WILLIAMS,<br><br>　　　　　　Petitioner,<br><br>　　　　v.<br><br>TERRI GONZALEZ, Acting Warden,<br><br>　　　　　　Respondent. | NO. CV 10-01378-SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On February 24, 2010, William Williams ("Petitioner"), a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody (the "Petition") pursuant to 28 U.S.C. § 2254. On June 14, 2010, Respondent[1] filed an Answer to the Petition (the "Answer"). Respondent lodged seven documents from

---

[1] Terri Gonzalez, Acting Warden of the California Men's Colony, where Petitioner is incarcerated, is substituted for her predecessor. See Fed. R. Civ. P. 25(d).

Petitioner's state proceedings. On July 6, 2010, Petitioner filed a Traverse (the "Traverse"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons discussed below, the Petition is DENIED and this action is DISMISSED WITH PREJUDICE.

## II.

### PRIOR PROCEEDINGS

On December 3, 1979, Petitioner pled guilty in the San Joaquin County Superior Court to first degree murder in violation of California Penal Code ("Penal Code") section 187. (Petition at 43).[2] On January 22, 1980, the trial court sentenced Petitioner to an indeterminate term of twenty-five years to life in state prison. (Id. at 44).

On December 19, 2007, the Board of Parole Hearings (the "Board") held a Subsequent Parole Consideration Hearing in which they denied Petitioner parole. (Lodgment 7, Transcript of Subsequent Parole Consideration Hearing ("Lodgment 7") at 1-68). On January 30, 2009, Petitioner filed a petition for writ of habeas corpus in the San Joaquin County Superior Court, which was denied on April 9, 2009, with a reasoned opinion. (Lodgment 1, Petition for Writ of Habeas Corpus ("Lodgment 1"); Lodgment 2, San Joaquin County Superior Court Order ("Lodgment 2")). On June 17, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied on June 18, 2009, without comment or citation to authority. (Lodgment 3,

---

[2] The Court refers to the pages of the Petition as if they were consecutively paginated.

1 Petition for Writ of Habeas Corpus ("Lodgment 3"); Lodgment 4,
2 California Court of Appeal Order ("Lodgment 4")). On August 4, 2009,
3 Petitioner filed a petition for writ of habeas corpus in the California
4 Supreme Court, which was denied on December 23, 2009, without comment
5 or citation to authority. (Lodgment 5, Petition for Writ of Habeas
6 Corpus ("Lodgment 5"); Lodgment 6, California Supreme Court Order
7 ("Lodgment 6")). Petitioner filed the instant Petition on February 24,
8 2010.

### III.

### FACTUAL BACKGROUND

On December 19, 2007, the Board held a Subsequent Parole Consideration Hearing with Presiding Commissioner Shelton and Deputy Commissioner Mejia. (Lodgment 7 at 3). Petitioner was represented by counsel at the hearing. (Id. at 4). During the hearing, Petitioner answered questions from the commissioners. (Id. at 12-42). At the close of the hearing, the San Joaquin County District Attorney's Office opposed parole and a deputy district attorney presented argument to the Board. (Id. at 43-45). Next, Petitioner's counsel presented argument on Petitioner's behalf. (Id. at 46-53). After Petitioner counsel presented argument, Petitioner spoke on his own behalf. (Id. at 53-55). Finally, the victim's sister spoke to the Board in opposition of parole. (Id. at 56-60).

After a recess for deliberations, the Board informed Petitioner of their decision that he was "not suitable for parole and [he] would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Lodgment 7 at 61). Presiding Commissioner

Shelton explained that the Board based its decision on Petitioner's inability to understand what caused him to commit the underlying offense, the "cruel and callous manner" in which Petitioner committed the underlying offense, Petitioner's need to address his narcissism, and the lack of letters to support Petitioner's parole plans. (Id. at 61-68).

## IV.
## PETITIONER'S CLAIM[3]

In the Petition, Petitioner raises only one claim for federal habeas relief. Petitioner contends that the Board's decision denying parole was not supported by "some evidence" of current dangerousness. (Petition at 5).

## V.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which effected amendments to the federal habeas statutes, applies to the instant Petition because Petitioner filed it after AEDPA's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S.

---

[3] In connection with his claim, Petitioner requests an evidentiary hearing. (See Petition at 39). However, because the Court finds the current record sufficient to resolve Petitioner's claim, an evidentiary hearing is unnecessary. See Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994) ("An evidentiary hearing is not required on allegations that are conclusory and wholly devoid of specifics. Nor is an evidentiary hearing required on issues that can be resolved by reference to the state court record." (internal quotation marks and citation omitted)).

4

320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  Under AEDPA, a federal court may grant habeas relief if a state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

"[A] decision by a state court is 'contrary to' [the] clearly established law [of the Supreme Court] if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" Frantz v. Hazey, 533 F.3d 724, 734 (9th Cir. 2008) (en banc) (quoting Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003)).  It is also "contrary to" clearly established Supreme Court case law "if it applie[s] the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result."  Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004) (citing Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  "A decision involves an 'unreasonable application' of federal law if 'the state court identifies the correct governing legal principle . . . but unreasonably applies

that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

Pursuant to AEDPA's "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [Supreme Court precedent] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (citations omitted). This standard requires more than a finding that the state court committed "clear error." Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Instead, the reviewing court must find that the application of federal law was "objectively unreasonable" in order to warrant habeas relief. Id. at 76. The Supreme Court has characterized AEDPA's standard of review as a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 334 n.7, and has opined that this standard "demands that state-court decisions be given the benefit of the doubt." Visciotti, 537 U.S. at 24. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011) (internal quotation marks omitted).

\\

\\

6

AEDPA limits the scope of clearly established federal law to the holdings of the United States Supreme Court as of the time of the state court decision under review. Andrade, 538 U.S. at 71 (citing Williams, 529 U.S. at 412). Here, the applicable state court decision is the opinion of the San Joaquin County Superior Court on habeas review. (Lodgment 2). The California Court of Appeal and the California Supreme Court denied Petitioner's habeas petitions without comment or citation to authority. (Lodgments 4 & 6). In these circumstances, a district court "looks through" the unexplained decisions to the last reasoned decision as the basis for the state court's judgment. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991)). To the extent that Petitioner's federal habeas claims were not addressed in any reasoned state court decision, however, this Court conducts an independent review of the record. See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). In such circumstances, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

**VI.**

**DISCUSSION**

**Petitioner Is Not Entitled To Habeas Relief On His Parole Suitability Claim**

In Petitioner's only claim for relief, Petitioner challenges the Board's December 19, 2007 determination that he is unsuitable for parole. (Petition at 5; Traverse 5-8). Specifically, Petitioner

contends that the Board's decision denying parole was not supported by "some evidence" of current dangerousness. (Petition at 5). There is no merit to this claim.

On habeas review, the San Joaquin County Superior Court rejected Petitioner's claim in relevant part as follows:

> Here, the Board plainly stated their concerns and why they had such concerns. Petitioner's presentation did not convince the Panel that he has overcome the characteristics which led to the offense because his language and understanding seem clinical.
>
> Accordingly, there is some evidence which supports the Board of Prison Hearings' decision. In re Rosenkrantz (2002) 29 C.4th 616, 657-658. In re Lawrence (2008) 44 C.4th 1181.

(Lodgment 2 at 3).

Petitioner's claim is now foreclosed by the Supreme Court's opinion in Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) (per curiam). In Swarthout, the Supreme Court held that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." Swarthout, 131 S. Ct. at 862. While the Supreme Court recognized that California law creates a liberty interest in parole, the Court held that the Due Process Clause requires only "minimal" procedures to vindicate that interest. Id.

Specifically, the Supreme Court held that a prisoner's state-law liberty interest in parole is sufficiently protected under the Federal Constitution as long as the prisoner is "allowed an opportunity to be heard and [is] provided a statement of the reasons why parole [is] denied." Id. (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 16, 99, S. Ct. 2100, 60 L. Ed. 2d 668 (1979)); see also Greenholtz, 442 U.S. at 16 ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more.").

In Swarthout, the Supreme Court rejected the claims of two habeas petitioners challenging their denials of parole because they "received at least [the] amount of process" required by the Federal Constitution. Swarthout, 131 S. Ct. at 862. Specifically, the petitioners "were allowed to speak at their parole hearings and to contest evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." Id. Once a federal habeas court has ensured that a petitioner received the amount of process required by the Federal Constitution, the Supreme Court explained that this is "the beginning and the end of the federal habeas court's inquiry." Id.; see also id. at 863 ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the [federal courts'] business.").

\\

Here, Petitioner received more than the "minimal" procedures required by the Federal Constitution. Swarthout, 131 S. Ct. at 862. As set forth above, see supra Part III, the Board held a hearing regarding Petitioner's parole status. (Lodgment 7 at 1-68). Petitioner was represented by counsel at the hearing who presented argument on Petitioner's behalf. (Id. at 46-53). Petitioner answered questions from the commissioners, (id. at 12-42), and presented a closing argument on his own behalf. (Id. at 53-55).

After a recess for deliberations, the Board informed Petitioner of their decision that he was "not suitable for parole and [he] would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Lodgment 7 at 61). Presiding Commissioner Shelton explained that the Board based its decision on Petitioner's inability to understand what caused him to commit the underlying offense, the "cruel and callous manner" in which Petitioner committed the underlying offense, Petitioner's need to address his narcissism, and the lack of letters to support Petitioner's parole plans. (Id. at 61-68). Thus, the Board gave Petitioner an opportunity to be heard and provided him with a reasoned decision.

Because Petitioner has received "at least [the] amount of process" required by the Federal Constitution, this is "the beginning and the end of the [Court's] inquiry." Swarthout, 131 S. Ct. at 862. Thus, the Court concludes that the state courts' denial of Petitioner's claim was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor was it an unreasonable determination of the facts.

See 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VII.
## CONCLUSION

IT IS ORDERED that: (1) the Petition is DENIED; and (2) Judgment shall be entered dismissing this action with prejudice.

DATED: February 17, 2011

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE